**UNITED TRANSPORTATION UNION,**
**Plaintiff,**

v.

**George P. BAKER et al., Defendants.**
**No. 72–CV–84.**

United States District Court,
N. D. New York.
May 17, 1972.

Kernan & Kernan, Utica, N. Y., James S. Kernan, Jr., Utica, N. Y., of counsel, for defendants.

PORT, Judge.

### Memorandum-Decision

In this action, plaintiff, the United Transportation Union (hereinafter Union), seeks to enjoin the defendants, Trustees of the Property of the Penn Central Transportation Company (hereinafter Railroad), from abolishing the last yard assignment at the Utica, New York yard. The action, seeking both temporary and permanent injunctive relief, was heard on March 21 and March 30, 1972.

Pursuant to Rule 52(a), Fed.R.Civ. Proc., the court makes the following findings of fact and conclusions of law:

1. Plaintiff is a voluntary association and labor organization within the meaning of the Railway Labor Act and is successor in interest to the former Brotherhood of Railroad Trainmen, Brotherhood of Locomotive Firemen and Enginemen, Order of Railway Conductors and Brakemen and Switchmen's Union of North America, and is the recognized collective bargaining agent for all of defendants' employees who are classified as conductors, trainmen, retarder operators, yard foreman, yard helpers, firemen, switchmen, switchtenders, hostlers and hostler helpers.

2. The Penn Central Transportation Company is a common carrier by railroad between the several states in the northeastern section of the United States within the meaning of that term as defined in the Railway Labor Act, 45 U.S. C. § 151 et seq. and is the successor in interest to the former New York Central Railroad Company.

3. Defendants, George P. Baker, Richard C. Bond, Jervis Langdon, Jr., and Willard Wirtz are Trustees of the Property of Penn Central Transportation Company, Debtor in Reorganization.

4. On June 25, 1964, the Union and Railroad, or their predecessors in inter-

McElroy & Dunn, Syracuse, N. Y., J. Murray Dunn, Syracuse, N. Y., of counsel, for plaintiff.

est, executed an Agreement which provided, in part, for the discontinuance of last yard assignments.

(a) Discontinuance under Article V, § 1 of this Agreement requires a joint study by the Union and Railroad before such discontinuance.

(b) Article V, § 2 provides that "[t]he provisions of section 1 hereof are not intended to impose restrictions in regard to discontinuing yard crew assignments where restrictions do not now exist."

5. It has been stipulated between the parties that Article V, § 1 does not apply to the parties hereto; that Article V, § 2 does apply to the parties hereto.

6. It was further stipulated between the parties that at all times pertinent to this case, there were no contractual restrictions on the right of the Railroad to unilaterally discontinue last yard assignments.

7. Between 1960 and 1962, the Railroad unilaterally abolished the last yard assignments at Norwood, New York and Cherry Tree, Pennsylvania.

8. Between 1964 and 1966, the Railroad discontinued the last yard assignments at Poughkeepsie, Newburgh, Auburn and Geneva, New York after studies were made pursuant to Article V, § 1 of the 1964 Agreement.

9. The Railroad followed the procedures of Article V, § 1 of the 1964 Agreement in abolishing the yards set forth in paragraph 8 under an erroneous belief that § 1 was applicable.

10. In 1967, the Railroad unilaterally discontinued the last yard assignment at the Catskill Mountain Branch, Kingston, New York.

(a) This action was contested by the Union before the National Mediation Board, Special Board of Adjustment No. 387.

(b) The Union in that proceeding took the position that the unilateral action by the Railroad was taken "[w]ith utter disregard for the existing Agreements, Interpretations and Practices * * *." Ex E, p. 22.

(c) By a decision dated November 19, 1969, the Special Board found in favor of the Railroad. The holding of the case follows:

From the facts of record in this case we have concluded that the Organization has not established that there are contractual restrictions prohibiting the Carrier from abolishing the last yard job on the Catskill Mt. Branch, Kingston, New York. Therefore, the Carrier was permitted, under Section 2 of Article V of the June 25, 1964 agreement, to discontinue the last yard job at the Catskill Mt. Branch yard without resort to the procedures provided in Section 1 of Article V.

11. In 1968 or 1969, the Railroad unilaterally discontinued the last yard assignment at Avis, Pennsylvania (Jersey Shore).

12. On April 15, 1970 plaintiff served upon defendant a formal notice in accordance with the provisions of the Railway Labor Act, 45 U.S.C. Section 156, as follows:

"Carrier is prohibited from removing last yard engines or last engines on a shift except by negotiation and agreement with the Organization. It is recognized that the principles set forth in the 1947 Wage & Rules settlement and the so-called Chatham Yard Agreement will control both parties in said negotiation." [1]

---

1. Another Section 6 Notice has found its way into this proceeding. On June 15, 1956, plaintiff served upon defendants' predecessor in interest a formal notice in accordance with the provisions of the Railway Labor Act, 45 U.S.C., Section 156, as follows:

"(a) There shall be no change in the location or construction of any yard or terminal facility, which affects the seniority rights, service or conditions of employment of engineers, firemen (helpers), hostlers, hostler helpers, conductors, trainmen, retarder operators, yard foremen, yard helpers, switchmen, or switchtenders in the service of the New York Central Railroad Company, Eastern District (except Boston Divi-

13. The parties dispute whether the April 15, 1970 Section 6 Notice is still outstanding.

14. As of April 15, 1970 a practice had been established under which the Railroad discontinued last yard assignments unilaterally in spite of objections or attempts at dissuasion by the Union.

15. After April 15, 1970 the Railroad continued its practice of unilaterally abolishing last yard assignments at Carthage, Oneida, Batavia, and Ogdensburg, New York.

16. Advance notice of intended discontinuances was posted by the Railroad as a matter of policy and to permit the exercise of seniority rights.

17. On February 1, 1972, the Railroad gave the Union notice of its intention to abolish the last yard assignment at the Utica yard as of the close of business on February 4, 1972.

18. By agreement of the parties and stipulation of their attorneys, the discontinuance of the last yard assignment at Utica was stayed pending the determination of this action. Said stipulation was incorporated in an order of the court dated April 13, 1972.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the persons and of the subject matter in this action.

2. Assuming the existence of an outstanding Section 6 Notice, the plaintiff has failed to prove by a fair preponderance of the evidence any violation of the status quo provision of 45 U.S.C. § 156.

3. Judgment should be entered in favor of the defendants dismissing the plaintiff's complaint.

## DISCUSSION

In order for the plaintiff to prevail in this action, it would have to prove the existence of an outstanding § 6 notice. The Railroad claims that by the terms of an Agreement dated January 27, 1972, all Section 6 Notices concerning road yard proposals have been withdrawn. This claim has been contested by the Union.

The Railroad contends that a resolution of this dispute requires a submission to the Adjustment Board for a construction of the contract. Because even the existence of an outstanding Section 6 Notice would not save the plaintiff's complaint from dismissal, it is unnecessary to decide whether the construction of the provisions of the 1972 contract appropriately lies with the court or the Adjustment Board. Cf. Order of Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946). All objections to evidence offered on this issue, rulings on which were reserved, are now sustained.

The Union construes the status quo provisions of 45 U.S.C. § 156 as requiring the continuation of the last yard assignment at Utica because it was in existence at the time of filing the Section 6 Notice. This is an impermissibly narrow view.

The status quo, as defined by Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969), includes "those actual, objective working conditions *and* practices, broadly conceived, which were in effect prior to the time the pending dispute arose and which are involved in or related to that dispute." 396 U.S. at 153, 90 S.Ct. at 301. *See also* Baker v. United Transportation Union, 455 F.2d 149 (3d Cir. 1971); United Transportation Union, Local No. 31 v. St. Paul Union Depot Company, 434 F.2d 220 (8th Cir. 1970).[2] Despite

---

sion) unless and until authorized by mutual agreement on the part of the parties signatory hereto."

The said Section 6 Notice dated June 15, 1956 is not relevant, material or pertinent to the discontinuance of the last yard assignment at the Utica yard.

2. Each of these cases involved practices which were not covered by contract. In

the existence of a last yard assignment at Utica on April 15, 1970, the established practice of the Railroad's abolishing last yard assignments unilaterally permits discontinuance without violating the status quo provision of § 156.

this case, the practice is the subject of contractual provisions. The contract *expressly* imposes no restrictions on the unilateral action by the Railroad; or, as was held by Special Board, Article V, § 2 *permits* such unilateral discontinuance.